IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Safety Today, Inc.,          :
    Plaintiff,           :    Case No. 2:12-cv-510
  v.                         :    JUDGE MICHAEL H. WATSON
Susan Roy, et al.,           :    Magistrate Judge Kemp
    Defendants.          :

OPINION AND ORDER

The nature and history of this case has been set forth at length in other orders of the Court and need not be repeated here. The case is currently before the Court to consider Safety Today's motion for sanctions against Defendant Safeware, Inc. (Doc. 140). Safety Today asks for monetary sanctions based on what it claims to have been Safeware's disobedience of certain written and oral orders issued by the undersigned Magistrate Judge which, Safety Today asserts, made its imaging of certain electronic devices (computers and cell phones) more expensive than necessary. For the following reasons, the motion for sanctions will be denied.

I.

The pertinent background to Safety Today's motion begins with the Court's Opinion and Order of March 27, 2013. Safety Today claimed, in its complaint, that defendants Susan Roy and Joanne Brady took confidential information with them when they left Safety Today's employ, and that they shared it with their new employer, Safeware. Because much if not all of that information was electronically stored, Safety Today asked, in

discovery, for access to any devices which might show what information the defendants actually expropriated.

When the parties could not reach agreement on the scope of such discovery, Safety Today moved to compel. Safeware's opposition was based on a lack of foundation for the request, its alleged burdensome or oppressive nature, and the fact that all such information had already been sequestered and preserved for Safety Today's review. The Court granted the motion to compel but, in order to address Safeware's concern about the confidential nature of some of the information which would be found on its devices, directed that the results of any such discovery be produced on an "attorneys' eyes only" basis. See Doc. 104.

Safeware expressed concern about the production of its electronic devices for imaging purposes, and was not satisfied that the restriction placed on that discovery was sufficient to safeguard its interests, given that it and Safety Today were competitors. As it had a legal right to do, Safeware moved to stay that order and also filed a motion for reconsideration with the District Judge. In the meantime, the parties engaged in discussions about how to implement the order if it were not stayed. They commendably brought several disputes about that process to the Court for possible informal resolution, and the Court held two informal discovery conferences in April and May, 2013, each time urging the parties to find a cooperative way to resolve their differences. Ultimately, the Court held a motions hearing on May 7, 2013, at which it made rulings designed to break those impasses which still separated the parties. A transcript of that hearing can be viewed at Doc. 136.

The transcript presents a fair review of what the issues were at that time. One issue was whether, if certain procedures could be implemented, Defendants would withdraw their motion to

reconsider and to stay the initial discovery order - something which had been a topic of discussion at the prior conferences as well, and a motion which the Court still had under advisement at that time. Defendants had offered several suggestions for the document production, which were (1) Defendants' counsel would maintain the complete images of the devices after Plaintiff's expert created them; (2) any documents ultimately produced would not be shared initially with Kimberly Duttlinger, who was counsel for Plaintiff, based on her dual role as counsel and business advisor, but further discussions could be had about sharing specific information with her after it was reviewed by litigation counsel; (3) Defendants' counsel would be able to review all of the documents produced by the imaging process and subsequent search process for privilege, relevance, and confidentiality before those documents were produced to counsel for Plaintiff, but would, upon request, provide copies of any withheld documents to Plaintiff's counsel for an in camera review, and would create logs showing what documents were being withheld; and (4) Defendants could not withhold any document which was either a Safety Today document or referred to a Safety Today document.

To counter that proposal, Safety Today made an oral motion for an order which would include "a date certain by which Safeware would grant Safety Today access to these computers for purposes of imaging them." (Tr. 17). Safety Today suggested that two weeks "would be about the right time frame for that deadline to come up." Id. It also asked for a time frame for privilege objections to be made (one month), and suggested that if these time frames were not met, Safeware would be precluded from opposing certain of Safety Today's claims on the merits or proceeding on its counterclaim. Finally, it requested a default judgment and expenses, again predicated on Safeware's failure to comply with deadlines established by the Court.

After that motion was argued, the Court explored the extent to which the parties had different positions on the protocol to be followed for producing the documents stored on the computers and other electronic devices which were subject to the Court's discovery order. The first three steps in their competing proposals were identical: that the vendor (Vestige) selected by Safety Today would make the images on-site, that it would run the search terms through the imaged databases at its place of business, and that it would deliver the results of that search, in CD form, to Safeware's counsel. Counsel also agreed that, consistent with prior court orders, Safeware's counsel would conduct a privilege review and would be entitled to withhold any documents based on a claim of privilege. However, Safeware also asked for the right to withhold documents (with the exception of documents coming from Safety Today or referring to those documents) on grounds of relevance, whereas Safety Today wanted all non-privileged documents produced subject to an attorneys'-eyes-only restriction. Safeware acknowledged, however, that if it did withhold any documents on the basis of relevance, and Safety Today, after reviewing the logs describing those documents, asked to have them produced for counsel's review, it would be obligated to do so.

The issue of review of documents by Kim Duttlinger then resurfaced. The Court, after hearing argument, concluded that it was the better practice to postpone any ruling about her status until some concrete issue about her need to see (or not to see) certain documents actually surfaced. The Court then modified its prior order to incorporate, more or less, the protocol offered by Safeware's counsel. No particular time frame was established for document production, although the Court referred to a month "as an outside parameter" and expressed a hope that the parties could "beat [the] proposed schedule by maybe two full weeks." (Tr. 53-

54). The actual order, coming at the conclusion of the conference, was (in terms not especially precise) "Let's do it. Get Vestige going. Get the images made. Get the review done. Get everything in place. And then we'll probably be a month down the road, and we'll see where we are." (Tr. 58).

                                II.

A substantial portion of the motion for sanctions deals with what took place after the May 7th conference. According to Safety Today, this is what happened.

First, Safeware offered to make all but one of the devices in question (which turned out to be seven hard drives, three servers, and three smart phones) available for imaging on any date between May 13th and May 17th. The one not available that week was Ms. Roy's smart phone. Safety Today arranged to have Vestige do the imaging at Safeware's Maryland location on the 16th. The day prior to that, Safeware let Safety Today know that another one of the smart phones would not be available any time that week. On the day of the inspection, two more devices - both laptops - were not ready to be imaged. Images were made of Ms. Roy's phone and laptop on May 23rd, but Mr. Arthur's were not produced until eight days later, apparently due to his travel schedule. The piecemeal production of these devices for imaging underlies one of Safety Today's three requests for monetary sanctions: an order for "expert fees and related costs incurred by Safety Today in having the Devices imaged on multiple dates and at multiple locations." Motion for Sanctions, Doc. 140, at 14.

The other two requests for monetary sanctions relate to events which both preceded and post-dated the May 7, 2013 order. Safety Today has asked for attorneys' fees and costs associated with all of its communications with Safeware's counsel between March 27, 2013, the date of the initial discovery order, and May

31, 2013, the date of the final imaging, and it has also asked for attorneys' fees and costs incurred in connection with the two informal telephone discovery conferences and the May 7th motions hearing.  Before discussing whether any of these requests stand on sound legal footing, the Court will briefly summarize Safeware's factual response.

Safeware notes that the imaging was never scheduled to be accomplished in just one setting.  Ms. Roy's phone was not offered to be available in Maryland, and Mr. Arthur's travel schedule prevented his phone and laptop from being available on that date at that location.  Those latter devices were available for a few hours on May 23rd, but Safety Today declined to perform the imaging that day because it felt more time was needed.  Mr. Arthur was finally tracked down on the 31st and the images were made then.  Safeware points out that some re-imaging had to occur in June, and notes that none of the glitches with imaging devices in May had any impact on the discovery schedule.  The Court notes, independently, that although Safety Today asserts in its brief that the piecemeal production of devices for imaging caused it additional vendor expense, it has not submitted any proof (like an affidavit or declaration) to that effect nor any estimate of those expenses.

III.

Fed. R. Civ. P. 37(b)(2) provides, in pertinent part, that:

> If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (I) directing that the matters embraced in the order or

other designated facts be taken as established for
purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting
or opposing designated claims or defenses, or from
introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is
obeyed;

(v) dismissing the action or proceeding in whole or in
part;

(vi) rendering a default judgment against the
disobedient party; or

(vii) treating as contempt of court the failure to obey
any order except an order to submit to a physical or
mental examination.

(B) *For Not Producing a Person for Examination*. If a
party fails to comply with an order under Rule 35(a)
requiring it to produce another person for examination,
the court may issue any of the orders listed in Rule
37(b)(2)(A)(i)-(vi), unless the disobedient party shows
that it cannot produce the other person.

(C) *Payment of Expenses*. Instead of or in addition to
the orders above, the court must order the disobedient
party, the attorney advising that party, or both to pay
the reasonable expenses, including attorney's fees,
caused by the failure, unless the failure was
substantially justified or other circumstances make an
award of expenses unjust.

Although the Court has authority under Rule 37 to impose various sanctions, and a certain amount of discretion to choose the sanction most appropriate, there are limits on that authority. For example, the power to order a dismissal or the entry of a default judgment, because such order deprives a party of a claim or defense without a hearing, is

not unlimited. "[T]here are constitutional limitations upon the power of the Courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Societe Internationale v. Rogers, 357 U.S. 197, 209 (1958). Consequently, if a party's failure to provide discovery or to comply with a court order is "due to an inability fostered neither by its own conduct nor by circumstances within its control," and therefore not due to "willfulness, bad faith, or any fault" on the part of that party, dismissal as a discovery sanction is inappropriate. Id. at 211, 212. On the other hand, where a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such "callous disregard" of discovery orders justifies dismissal. National Hockey League v .Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976)(per curiam).

In this circuit, an order imposing dismissal may be entered only if the Court makes an explicit finding that a party bears responsibility for failure to make discovery, and a written consideration of the various factors involved in entering such an order.

> "Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith or fault....[A] dismissal of a complaint with prejudice as a sanction for failure to cooperate in discovery must be 'accompanied by some articulation on the record of the Court's resolution of the factual, legal and discretionary issues presented.'" Patton v. Aerojet Ordnance Co., 765 F.2d 604, 607 (6th Cir. 1985), quoting Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3rd Cir. 1982).

In considering whether dismissal or default is an appropriate sanction, the following factors are important. First, the Court must assess the extent of the non-complying party's culpability and take into account any reasons that might justify the failure to make discovery. The Court must also consider the harm caused by non-compliance with discovery orders, including the harm which would result if open defiance of court orders were to go unpunished. The Court must also balance the severity of the sanction against the nature of the misconduct that has occurred, and determine whether it is the non-complying party, or that party's counsel, who is at fault in failing to comply with the discovery order or orders in question. Pauley v. United Operating Co., 606 F. Supp. 520 (E.D. Mich. 1985).

Open and unequivocal defiance of a court order, however, is not the sole basis for a finding of bad faith or willful misconduct. The failure to respond to a court order, without justification, after being fully informed of the obligation to respond and the penalties for non-compliance can be deemed to be willful misconduct. Brookdale Mill, Inc. v. Rowley, 218 F.2d 728 (6th Cir. 1954); see also Hashemi v. Campaigner Publications, Inc., 737 F.2d 1538 (11th Cir. 1984). Indeed, a prior warning that failure to cooperate in discovery may lead to dismissal is a factor to be considered in determining whether the court properly exercises its discretion in imposing discovery sanctions. Taylor v. Medtronics, Inc., 861 F.2d 980 (6th Cir. 1988). Taylor also cautions, however, that the court should consider sanctions less drastic than dismissal and, in some cases, may be required to impose such sanctions before dismissal as a discovery sanction is appropriate. See also Regional Refuse Systems v. Inland Reclamation Co., 842 F.2d 150 (6th Cir. 1988).

The first requirement for imposing sanctions under this rule is that a party have disobeyed a court order compelling

discovery.  Safety Today has identified two orders which it claims Safeware to have violated: the order of March 27, 2013, and the order of May 7, 2013.  Safeware argues that it violated neither.  The Court agrees.

The first of these two orders directed Safeware to make its electronic storage media available for imaging, and to produce the nonprivileged documents on those media.  It did not do so immediately after the order was entered, but it acted appropriately by seeking a stay and asking the District Judge to reconsider the order.  The motion for stay, and alternatives to granting a stay, were the subject of considerable discussion both between the parties and with the Court over the course of several weeks following the filing of that motion.  Rather than either enforce the order according to its precise terms or stay the order pending reconsideration by the District Judge - either of which would have pushed the parties to the next step of the process - the Court first attempted to obtain an agreement which would both permit compliance with the order and resolve the issues which Safeware raised in the motion to stay.  When that course of action failed, the Court held a motions hearing and modified its own order - an action implicitly requested by Safeware, and something the Court always retains the capacity to do.  See, e.g., Mallory v. Lynch, 922 F.2d 1273, 1282 (6th Cir. 1991)("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment").  Given the modification of the order, the question raised in this case is not whether Safeware complied with the March 27, 2013 order, standing alone, but whether it complied with the March 27, 2013 order **as modified**.  Thus, to the extent that Safety Today's motion rests on the premise that Safeware violated the earlier order by not producing the devices for imaging prior to the May 7, 2013 motions hearing, that premise is faulty.  The final word on how and when those devices were to be produced came in the modification.

Even if that were not the case - and there may be some situations (although not this one) where a party can successfully obtain a modification of an earlier order yet still have failed to comply with that order in a way that invites sanctions - the Court would not ordinarily sanction a party who has sought both a stay of an order and, in good faith, a modification of that order before complying with it. The record contains no indication that the modifications Safeware asked for were requested in bad faith and, in fact, the Court substantially adopted them when it modified the order. Further, it was this Court's efforts to obtain an agreement from the parties to go forward with discovery notwithstanding the pending motions for stay and reconsideration, and its choice not to make an immediate ruling on the motion to stay which effectively prevented Safeware from pursing its stay motion before the District Judge. It would be perverse indeed to penalize Safeware under circumstances where it had a right to obtain a judicial ruling on its stay request but did not get one because the Court was working with the parties to obviate the need for such a stay. Overall, absent a finding of either disobedience to the Court's order, or a lack of good faith in attempting to have that order stayed, rescinded, or modified, there is simply no basis for awarding sanctions for any of Safeware's conduct between March 27, 2013 and May 7, 2013.

The remaining question is whether Safeware complied with the May 7 order. As noted above, the key elements of that order were to undertake, expeditiously, the imaging of the storage media, to get the privilege review accomplished, and to get the documents produced. The Court expressed some optimism about the time needed to do that, but did not impose any strict time limits. It appears from the parties' filings, including the reply memorandum, that the imaging process did not go as smoothly as was hoped - both the delays in getting access to Mr. Arthur's devices and an unexpected software problem encountered by Vestige contributed to that delay - but by August 21, 2013, Vestige had

completed its review and provided documents to Safeware's counsel.  The Court has heard nothing further which would suggest that there were any other delays in getting the documents produced.  It is simply not possible, on this record, to conclude that Safeware's conduct after the May 7 conference, which culminated in the imaging of all of the devices within 24 days, violated the express terms of the Court's order.

As noted, however, the process did not go without its hiccups, and, perhaps as a matter separate from alleged disobedience to a court order, Safety Today has suggested that the delay and circumstances surrounding the production of Mr. Arthur's laptop and smart phone call for sanctions.  It is not clear what the basis of such an award would be; perhaps Safety Today claims that Safeware violated an agreement reached between the parties as to the production of the devices, or acted in bad faith in unnecessarily complicating the imaging process.  Apart from the fact that there is currently no evidence of record that Vestige actually incurred additional expenses by having to image Mr. Arthur's devices separately - which would require some comparison between how much time it would have devoted to that effort had they been produced with the other devices versus the time (including travel) and expense incurred in imaging them on a separate date at a separate location - there is also no evidence that Safeware acted in bad faith or intentionally attempted to make the process more difficult.  It may be the case that had it "pressured" Mr. Arthur sufficiently, it could have gotten his devices earlier, but it did inform Safety Today in advance of the May 16 production that Mr. Arthur's phone would not be there due to his travel schedule.  Whether or not his computer had been made available then (and it appears that Safety Today was led to believe it would be, and was surprised at its absence), it would still have been the case that a separate imaging session had to be scheduled for his smart phone.  In other words, if the email string attached to Safety Today's motion does represent a written

agreement between the parties as to the imaging process, the only apparent breach was the failure to have Mr. Arthur's laptop in Maryland on May 16, and the consequences of that failure appear to have been minimal given the need to perform a separate imaging on his cell phone.  Safety Today did have to pursue his devices with some additional vigor, but that alone is neither enough to demonstrate bad faith on Safeware's part or to justify awarding sanctions.

IV.

This case has not been the easiest one to manage from the Court's perspective.  It has generated more than the usual amount of motions practice concerning discovery.  The Court has made rulings both for and against each party, and both parties have, at various times, moved for reconsideration and a stay of those orders.  That having been said, the Court finds nothing sanctionable in the proceedings following its grant of Safety Today's motion to compel, nor any disobedience of the order of March 27, 2013, as modified on May 7, 2013.  This is not to say that, in other circumstances, a party's noncompliance with a discovery order absent a stay of that order would be justified or would escape sanctions, but under the circumstances of this particular case, sanctions are just not appropriate.  The motion for sanctions (Doc. 140) is therefore denied.  The Court also denies as moot the motion (Doc. 145) to amend and correct the case schedule, and directs the parties to submit a joint proposed scheduling order within fourteen days.

V.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to

objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp  
United States Magistrate Judge